# Supreme Court of Louisiana

FOR IMMEDIATE NEWS RELEASE NEWS RELEASE #005

FROM: CLERK OF SUPREME COURT OF LOUISIANA

The Opinions handed down on the **27th day of January, 2016**, are as follows:

**BY CRICHTON, J.**:

2015-C -1175     MICHAEL DUNN AND THE CLASS OF SIMILARLY SITUATED PERSONS, KENNER
                 FIRE FIGHTERS ASSOCIATION LOCAL 1427 IAFF v. CITY OF KENNER
                 (Parish of Jefferson)

                 For the reasons set forth herein, we find that the trial court
                 erred in granting Kenner's motion for summary judgment on each of
                 the four types of compensation at issue – educational incentive
                 pay, seniority incentive pay, holiday pay, and acting pay – and
                 denying the Firefighters' cross-motion for summary judgment. We
                 further hold that the court of appeal was correct to find no
                 genuine issues of material fact that the four payment types must
                 be included as "earnable compensation" and that the Firefighters
                 were entitled to judgment as a matter of law, and to its
                 rendering of summary judgment in favor of the Firefighters.
                 Accordingly, we affirm the judgment of the court of appeal.
                 AFFIRMED.

                 HUGHES, J., dissents in part with reasons.

SUPREME COURT OF LOUISIANA

NO. 2015-C-1175

MICHAEL DUNN AND THE CLASS OF SIMILARLY SITUATED
PERSONS, KENNER FIRE FIGHTERS ASSOCIATION LOCAL 1427 IAFF

VERSUS

CITY OF KENNER

ON WRIT OF CERTIORARI TO THE COURT OF APPEAL,
FIFTH CIRCUIT, PARISH OF JEFFERSON

**CRICHTON, J.**

This case arises from a dispute between the City of Kenner ("Kenner") and Kenner's firefighters concerning the computation of retirement benefits under La. R.S. 11:233 and 11:2252. The dispute centers around four types of compensation – educational incentive pay, seniority incentive pay, holiday pay, and acting pay – and the *res nova* question presented to the Court is whether these types of compensation should be considered "earnable compensation" for purposes of calculating the firefighters' pension contributions. For the reasons set forth below, we affirm the court of appeal holding that no genuine issues of material fact remain as to whether each of the four types of pay constitutes "earnable compensation" under the requirements of the statutes.

## BACKGROUND

In 1999, the Kenner merged its municipal retirement system for firefighters with the statewide Firefighters' Retirement System ("FRS"). Under the pre-1999 municipal retirement system, Kenner calculated firefighters' pension contributions based on base pay and supplemental pay, but did not include in the calculation educational incentive pay, seniority incentive pay, holiday pay, and acting pay. After the systems merged, Kenner made no changes in its method of calculating pension contributions.

In May 2010, Michael Dunn, on his own behalf and on behalf of the class of all similarly situated employees of the Fire Department, City of Kenner and of the members of the Kenner Fire Fighters Association Local 1427 ("Firefighters"), filed a lawsuit in the 24th Judicial District Court, Parish of Jefferson, against Kenner, seeking retroactive adjustment to, and forward correction of, Kenner's pension contributions.[1] The Firefighters later amended the petition to remove the class allegations, adding individual firefighters and alleging that Local 1427 was suing on behalf of its members. The Firefighters alleged that certain types of pay – educational incentive pay, seniority incentive pay, holiday pay, and acting pay – should be included in the definition of "earnable compensation" for the purpose of calculating pension contributions pursuant to La. R.S. 11:233.[2] In July 2010, Kenner began remitting pension contributions on holiday and acting pay, but did not make retroactive adjustments to holiday pay and acting pay or begin remitting pension contributions on either educational incentive pay or seniority incentive pay.[3]

Kenner filed a motion for summary judgment in October 2013, arguing that these four types of compensation were not "earned" during a "regular tour of

---

[1] In 2002, Dunn on behalf of himself and a class of similarly situated firefighters filed an initial suit against Kenner, alleging that Kenner miscalculated the employees' longevity pay, overtime pay, and holiday pay and intentionally concealed the miscalculations. The trial court dismissed the petition on the grounds of abandonment in 2007, and the court of appeal reversed. This Court then granted the writ, reversed the court of appeal, and reinstated the trial court's decision. 09-1108 (La. 9/18/09), 17 So. 3d 400.

Pending the outcome of the first suit, the plaintiffs filed another lawsuit asserting miscalculation of wages. Kenner filed an exception of *lis pendens* and prescription, which the trial court granted and the court of appeal affirmed. 08-690 (La. App. 5 Cir. 4/28/09), 13 So. 3d 593.

[2] The Firefighters also sought relief on wage issues, specifically retroactive and forward pay adjustments on Kenner's failure to include state supplemental pay in the calculation of longevity, holiday, and overtime pay. The trial court granted Kenner's peremptory exception of prescription, which was reversed by the court of appeal. This Court denied Kenner's application for a supervisory writ. 10-786 (La. App. 5 Cir. 1/31/11), *writ denied*, 11-0372 (La. 4/25/11), 62 So. 3d 88. In April 2012, the Firefighters filed a motion for partial summary judgment on both the wages and pension issues. The trial court denied the motion on the pensions, but granted the motion on the wage issues. As a result, the only claims remaining are these pension claims.

[3] A certified public accountant engaged by Kenner conducted an audit to determine the amounts that Kenner would owe FRS regarding holiday and acting pay. The CPA determined that Kenner's obligation would be approximately $832,000 with regard to these types of payment. The report did not address incentive pay.

duty," and were instead either bonuses or other types of irregular, nonrecurring, or deferred payments. The Firefighters then filed a cross-motion for summary judgment on the same issues, claiming Kenner was liable for failing to pay pension contributions on the four types of pay.

On December 17, 2013, after a hearing on both motions, the trial court granted Kenner's motion for summary judgment and denied the Firefighters' cross-motion for summary judgment. The trial court found that educational incentive pay, seniority incentive pay, holiday pay, and acting pay "are not included as earnable compensation pursuant to La. R.S. 11:233," and therefore should not be considered in calculating the Firefighters' pension contributions. The trial court stated that it chose to interpret the statute in a "strict fashion," noting that "[i]f the statute doesn't say it, okay, I'm not inclined to include it, regardless of how any public entity may feel about voluntarily contributing anything to any pension."

The Court of Appeal, Fifth Circuit, heard the Firefighters' appeal before a three-judge panel. Before rendering a decision, the court of appeal, *en banc*, requested and heard additional argument and subsequently reversed the trial court. *Dunn v. City of Kenner*, 14-113 (La. App. 5 Cir. 5/14/15), 170 So. 3d 1065. The court of appeal noted that none of the four types of compensation at issue in the case are expressly included or excluded as earnable compensation in the language of La. R.S. 11:233, and therefore found the statute to be "inherently ambiguous." The court of appeal then undertook a two-step analysis under the catch-all provision of La. R.S. 11:233(B)(2)(g), which excludes from the definition of earnable compensation "any other type of irregular or nonrecurring payment." First, the court of appeal analyzed whether each type of compensation is "earned," and second, the court of appeal analyzed whether each type of compensation was "irregular or nonrecurring." Under this analysis, the court of appeal found that each of the four types of compensation is earned and regular or recurring. The

3

court of appeal reversed both the trial court's grant of Kenner's motion for summary judgment and the trial court's denial of the Firefighters' motion for summary judgment. The court of appeal expressly found no genuine issues of material fact as to whether the four payment types must be included as "earnable compensation," found the Firefighters were entitled to judgment as a matter of law, and rendered summary judgment in favor of the Firefighters.[4]

We granted the writ to determine whether each of the four types of payment at issue constitutes "earnable compensation" for purposes of pension contributions. *Dunn v. City of Kenner*, 15-1175 (La. 10/2/15).

## APPLICABLE LAW

Courts of this state have routinely recognized the remunerative nature of retirement contributions, which represent "an increasingly important part of an employee's compensation for his services." *See Fishbein v. State ex rel. L.S.U. Health Sciences Center,* 04-2482 (La. 4/12/05), 898 So. 2d 1260 (quoting *Andrepont v. Lake Charles Harbor & Terminal Dist.*, 602 So. 2d 704, 708 (La. 1992)). We have described retirement contributions as "an inducement to employees to remain in the service of the company to enjoy the benefits the plan promised." *T.L. James & Co. v. Montgomery*, 332 So. 2d 834, 841 (La. 1975). An employer's contribution to retirement is "not a purely gratuitous act, but it is in the nature of additional remuneration to the employee who meets the conditions of the plan." *Id. See also Born v. City of Slidell*, 15-0136 (La. 10/14/15), -- So. 3d --, 2015 WL 5972534 ("[W]hen an employer promises a benefit to employees, and employees accept that offer, or benefit, by their actions in meeting the conditions, the result is not a mere gratuity . . . .").

---

[4] Judge Liljeberg concurred in part and dissented in part, agreeing with the majority's decision on educational incentive pay, acting pay, and holiday pay, but finding that seniority incentive pay is not earnable compensation. 14-113 (La. App. 5 Cir. 5/14/15), 170 So. 3d 1065.

4

Article X, section 29(E) of the Louisiana Constitution recognizes the importance of the state retirement systems, providing that "[t]he actuarial soundness of state and statewide retirement systems shall be attained and maintained and the legislature shall establish, by law, for each state or statewide retirement system, the particular method of actuarial valuation to be employed for purposes of this Section." In the year following the adoption of La. Const. Art. X, § 29(E), the legislature enacted Title 11 of the Louisiana Revised Statutes. Title 11 was enacted "to consolidate public retirement law in order to effectively comply with the mandate of Article X, §29(E) of the Constitution of Louisiana to maintain public retirement systems on a sound actuarial basis." La. R.S. 11:2. *See*, *e.g.*, *City of New Orleans v. La. Assessors' Retirement and Relief Fund*, 05-2548 (La. 10/1/07), 986 So. 2d 1 (generally discussing establishment of consolidated public retirement systems).

To comply with the constitutional mandate, the legislature established employee contribution rates. *See* La. R.S. 11:62. La. R.S. 11:233(B)(1) falls within Chapter 4 of Title 11, titled "Provisions Affecting More Than One System," which specifically applies to FRS and other public retirement or pensions systems, funds, and plans. La. R.S. 11:233(B)(1) obligates cities and public bodies to make pension contributions on "earnings or earned or earnable compensation, or its equivalent," which "shall mean the full amount earned by an employee for a given pay period." La. R.S. 11:233(B)(2) then lists types of compensation specifically excluded from the definition of "earnable compensation." La. R.S. 11:233 provides, in pertinent part:

A. The provisions of this Section shall apply to the following public retirement or pension systems, funds, and plans:

(1) Firefighters' Retirement System. . . .

B. (1) . . . [F]or purposes of calculation of the amount of contributions payable by an employer and employee and for computation of average compensation, **earnings or earned or earnable compensation, or its equivalent, shall mean the full amount earned by an employee for a given pay period**.

(2) **Earnings or earned or earnable compensation shall not include**:

(a) Overtime unless it is required to be worked in the employee's regular tour of duty;
(b) Operating expenses;
(c) Use of automobile or motor vehicles;
(d) The cost of any insurance paid by the employer;
(e) Any allowance for expenses incurred as an incident of employment;
(f) Payments made in lieu of unused annual or sick leave; and
(g) Bonuses, terminal pay, severance pay, deferred salary, **or any other type of irregular or nonrecurring payment**.

*Id.* (emphasis added).

La. R.S. 11:233 is not the only statute relevant to our interpretation of what is included in a Firefighter's "earned or earnable compensation." In La. R.S. 11:2252, which falls under Chapter 9 of Title 11 and governs FRS specifically, the legislature stated: "'Earnable compensation' shall mean the full amount of compensation earned by an employee on a ***regular tour of duty***, including supplemental pay paid by the state of Louisiana, but shall not include overtime." La. R.S. 11:2252(9)(a). (emphasis added).

Kenner has sought review of the court of appeal's ruling, arguing that none of the types of compensation at issue in this case are "earnable compensation" under La. R.S. 11:233. Specifically, Kenner argues that "earnable compensation" does not include educational incentive pay, seniority incentive pay, holiday pay, or acting pay, because these types of pay are gratuitous bonuses, irregular and/or nonrecurring payments, and not earned during a regular tour of duty. The Firefighters argue that the four types of compensation at issue in this case should all be considered "earnable compensation" for purposes of calculating their pension contributions under La. R.S. 11:233.

6

## ANALYSIS

Legislation is the solemn expression of the legislative will; thus, the interpretation of legislation is primarily the search for the legislative intent. *Cat's Meow, Inc. v. City of New Orleans*, 98-0601, p.15 (La. 10/20/98), 720 So. 2d 1186, 1198; *La. Safety Ass'n of Timbermen Self-Insurers Fund v. La. Ins. Guar. Ass'n,* 09-0023, p.8 (La. 6/26/09), 17 So. 3d 350, 355-56. *See also* La. R.S. 24:177(B)(1) ("The text of a law is the best evidence of legislative intent."). When a law is clear and unambiguous, and its application does not lead to absurd consequences, it shall be applied as written, with no further interpretation made in search of the legislative intent. La. R.S. 1:4. The starting point for interpretation of any statute is the language of the statute itself. *See, e.g., Cat's Meow,* 98-0601, p. 15, 720 So. 2d at 1198; *Timbermen,* 09-0023, p.8, 17 So. 3d at 356. Pension statutes, like those at issue here, are remedial in nature and must be liberally construed in favor of the intended beneficiaries. *Swift v. State*, 342 So. 2d 191, 196 (La. 1977). Any ambiguity in such statutes must be resolved in favor of the persons intended to be benefited by those statutes. *Id.* Additionally, "all laws pertaining to the same subject matter must be interpreted in *pari materia*, or in reference to each other." *See*, *e.g.*, *State v. Williams*, 10-1514 (La. 3/15/11), 60 So. 3d 1189, 1191; La. C.C. art. 13.

La. R.S. 11:233 and La. R.S. 11:2252(9) are to be read in *pari materia*, because they both relate directly to calculation of pension benefit contributions for firefighters. These statutes make clear that there are certain kinds of compensation on which contributions are due, and certain kinds of compensation on which contributions are not due. Compensation on which contributions are due must first be "earnings or earned or earnable compensation," which "shall mean the full amount earned by an employee for a given pay period" (La. R.S. 11:233(B)(1)) and "the full amount of compensation earned by an employee on a regular tour of

7

duty, including supplemental pay paid by the state of Louisiana" (La. R.S. 2252(9)(a)). Additionally, under La. R.S. 11:233(B)(2), the "earnings or earned or earnable compensation" must be something other than the categories excluded from the calculation, including unused sick leave, deferred salary, overtime, a bonus, or "any other type of irregular or nonrecurring payment."

We first turn to the meaning of "earnable" compensation, which is defined in the statutes themselves. As noted above, La. R.S. 11:233(B)(1) states that earnable compensation "shall mean the ***full amount*** earned by an employee ***for a given pay period***." *Id.* (emphasis added). Likewise, La. R.S. 11:2252(9)(a) defines earnable compensation as "the ***full amount*** of compensation earned by an employee on a ***regular tour of duty***." *Id.* (emphasis added). The phrase "full amount" is only limited by the terms "for a given pay period" and "on a regular tour of duty," and by the expressly excluded categories set forth in La. R.S. 11:233(B)(2)(a)-(g).

This Court previously analyzed the term "earnable compensation" in the context of the Teachers' Retirement System, in a case in which the plaintiff sought a declaratory judgment that her supplemental salary was a component of earnable compensation for purposes of calculating retirement benefits. *Fishbein*, 898 So. 2d at 1264 (interpreting La. R.S. 11:701(10)). In that case, the controlling pension statute did not expressly include or exclude supplemental salary as earnable compensation. Rather, the statute required that the salary be earned during the member's "full normal working time as a teacher." La. R.S. 11:701(10). The *Fishbein* Court held that the supplemental compensation was earned during the plaintiff's "full normal working time," and paid to the plaintiff "based upon the market conditions and the responsibilities she undertook." *See Fishbein*, 04-2482, p.18, 898 So. 2d at 1271. The Court also found that supplemental pay was "not sufficiently analogous" to any of the items of pay expressly excluded in the statute. 898 So. 2d at 1272. *Fishbein* is instructive here insofar as it examines the

8

supplemental pay at issue both in connection with whether it is "earnable" and whether it is "analogous" to the excluded types of pay listed in La. R.S. 11:233(B)(2)(g).

Though it is not defined in La. R.S. 11:233 or La. R.S. 11:2252, the term "regular tour of duty" is defined in the federal context as "a firefighter's official work schedule, as established by the employing agency on a regular and recurring basis . . . . The tour of duty may consist of a fixed number of hours each week or a fixed recurring cycle of work schedules in which the number of hours per week varies in a repeating pattern." 5 C.F.R. 550.1302. The Kenner Firefighters work 212 hours over a 28-day period.[5]

The general pension statute also sets forth what items are not included in earnable compensation. "Overtime" is not included "unless it is required to be worked in the employee's regular tour of duty." La. R.S. 11:233(B)(2)(a). Additionally, certain other categories are expressly excluded, as set forth in La. R.S. 11:233(B)(2)(b)-(g). These include operating expenses, insurance paid by the employer, payments made in lieu of unused annual or sick leave, and "bonuses, terminal pay, severance pay, deferred salary, or **any other type of irregular or nonrecurring payment**." La. R.S. 11:233(B)(2) (emphasis added). The terms "irregular" and "nonrecurring" are unambiguous. For purposes of statutory interpretation, dictionaries are a valuable source for determining the "common and approved usage of words." *Gregor v. Argenot Great Cent. Ins. Co.*, 02-1138, p.7 (La. 5/20/03), 851 So. 2d 959, 964. Merriam-Webster defines "**irregular**" as "not normal or usual: not following the usual rules about what should be done," and "happening or done at different times that change often"; it defines "**nonrecurring**" as "unlikely to happen again." *See* "irregular" and "nonrecurring,"

---

[5] Though we do not believe the term "regular tour of duty" is ambiguous, and no party has argued that it is, we note that any ambiguity must be resolved in favor of the beneficiaries. *See Swift*, 342 So. 2d at 196.

9

Merriam-Webster Online Dictionary 2015, *available at* http://www.merriam-webster.com. These terms are capable of plain language interpretation.

A straightforward reading of the statutes in *pari materia* makes clear that to qualify as compensation eligible for contribution calculation, the earnings are (1) "earned or earnable compensation" – specifically, the earnings are the "full amount" of compensation earned "for a given pay period" or "on a regular tour of duty" – and (2) the earnings are not expressly excluded from the calculation by the list in La. R.S. 11:233(B)(2)(a)-(g) or by the "catch all" provision of "irregular and nonrecurring" in La. 11:233(B)(2)(g). We find that these statutes are clear and unambiguous. The words in the statutes, and the statutes as a whole, can be interpreted and understood according to their plain language. *See Fishbein,* 04-2482, 898 So. 2d 1260 (finding no ambiguity in interpreting the term "earnable compensation" in connection with the Teachers' Retirement System).[6]

The motions at issue here are motions for summary judgment, and we are therefore cognizant of the standard of review for such motions. A motion for summary judgment is a procedural device used when there is no genuine issue of material fact for all or part of the relief prayed for by a litigant. It is reviewed on appeal *de novo,* with the appellate court using the same criteria that govern the trial court's determination of whether summary judgment is appropriate; *i.e.,* whether there is any genuine issue of material fact, and whether the movant is entitled to judgment as a matter of law. *Reynolds v. Bordelon*, 14-2371 (La. 6/30/15), 172 So. 3d 607. We will now review each of the types of payment in turn.

---

[6] Though the court of appeal in the instant case ultimately reached the correct result, we decline to adopt certain of its findings. First, the court of appeal held that La. R.S. 11:233 is "inherently ambiguous," because the four types of compensation at issue are not expressly included or excluded in the language of La. R.S. 11:233(B)(2). 14-113, p.8, 170 So. 3d at 1070. For the reasons set forth above, we do not agree, and find the statute to be unambiguous. Second, the court of appeal held that the terms "irregular and "nonrecurring" are "at the crux of this analysis." *Id.* But in making this finding, the court of appeal favored one factor over the others and did not appropriately consider the meaning of "earnable" under La. R.S. 11:233(B)(1) and La. R.S. 11:2252(9).

**Educational Incentive Pay**

Educational incentive pay is compensation paid to firefighters who complete certain education requirements, including college degrees or other prerequisite educational certifications determined by Kenner. *See* La. R.S. 33:2586 (authorizing establishment of "a plan for awarding incentive pay" and noting that the pay "shall be in addition to any other salary the classified employee is entitled to receive from the municipality, the state, or any other governmental entity"). The pay is calculated annually and paid monthly, in 12 separate and equal installments, to qualifying Firefighters. The court of appeal found that educational incentive pay is "earned compensation" within the meaning of La. R.S. 11:233, and we agree.

First, educational incentive pay constitutes "earnings or earned or earnable compensation." Kenner claims that the word "incentive" itself demonstrates that educational incentive pay is in the nature of a bonus, but we disagree. Accepting this argument would conflict with a guiding principle of our statutory interpretation: when a law is clear and unambiguous, and its application does not lead to absurd consequences, it shall be applied as written. La. R.S. 1:4. Kenner's interpretation of "incentive" in this context would lead to absurd consequences, because it would permit Kenner, at its own discretion, to label types of compensation as a "bonus" in order to circumvent pension contributions.[7]

Here, as in *Fishbein*, the Firefighters "earned" the educational incentive pay, because it is based on additional education of the Firefighters. In exchange for the payments, the educational incentive pay plan provides Kenner with the benefits of an enhanced fire protection and emergency response force.[8] The Firefighters

---

[7] Indeed, though it is not directly analogous, in the employment law context, courts have recognized the distinction between an incentive and a bonus. *See* Rick J. Norman, La. Prac. Employment Law § 4:27 (updated Dec. 2015) (collecting cases) (noting that sums that are paid "as part of an incentive plan to encourage longevity or production may be called 'bonuses,'" but such payments are not true bonuses and "have been considered wages").

[8] *See*, *e.g.*, *Morgan v. City of Shreveport*, 46-362 (La. App. 2 Cir. 7/13/11), 71 So. 3d 1104, 1109-10 (noting that Shreveport's educational incentive pay plan incentivizes firefighters to "be

"earn" this pay and receive it as part of the "full amount" of compensation earned "for a given pay period" or "on a regular tour of duty." *See* La. R.S. 11:233(B)(1); La. R.S. 11:2252(9)(a). Kenner cannot change the nature of the payment simply by giving it a name similar to a "bonus."

Further, the educational incentive payments are not "irregular" and "nonrecurring" such that they would fall under the catch-all provision of La. R.S. 11:233(B)(2)(g). The evidence submitted by the Firefighters in support of their motion for summary judgment makes clear that the payments were submitted monthly to qualifying Firefighters, in a routine manner that is scheduled to occur for as long as the Firefighters qualify and funds are available.[9] Kenner submitted no contradictory evidence either in support of its motion for summary judgment or in opposition to the Firefighters' motion for summary judgment that would carry its burden of demonstrating that the educational incentive pay program was anything other than an earned, regular payment. Finally, as noted by the court of appeal, the legislature's decision not to specifically exclude educational incentive pay from the definition of "earnable compensation" in the list of exclusions in La. R.S. 11:233(B)(2) further supports the conclusion that it is included as earnable compensation. *See Fishbein*, 898 So. 2d at 1272.

---

better trained for the lifesaving and property-protecting services they provide"), *writ denied*, 11-1929 (La. 11/14/11), 75 So. 3d 944.

[9] The evidence included:

A 1995 memorandum from Kenner's Fire Chief to all fire department personnel, which stated that the educational incentive program was part of the effort to "try and increase benefits" within the existing budget.

A 1997 internal communication from Kenner's Fire Chief to all fire personnel, which discusses the requirements for the receipt of educational incentive pay and states that "[a]fter the above has been completed, the fire suppression personnel will start to get credit for that month on, until the end of the year."

A 1998 memorandum from Kenner's Mayor to Kenner's Firefighters, which states that the Mayor was seeking to "increase the Educational Incentive Plan," which "could translate to an additional $50 per month for firefighters who are qualified, for a total of $100 per month."

1998 memorandum from Kenner's Fire Chief to all fire personnel describing "second level of LSU Certifications," which states that educational incentive pay would be paid monthly to qualifying firefighters "as long as funds are available."

**Seniority Incentive Pay**

Kenner developed and implemented the Seniority Incentive Pay Program in 1995 to incentivize experienced firefighters to remain with the fire service. Seniority incentive pay is paid once a year in January to Firefighters who have completed an additional 12 months of service.[10] An employee who separates from the fire service any time within the calendar year receives no seniority incentive pay for that year.

Kenner asserts that seniority incentive pay is "not connected in any manner whatsoever" to a Firefighter's rank, the number of hours worked, or services rendered, and therefore argues it is "obviously" in the nature of a bonus intended to retain experienced employees and excluded from contribution calculations under La. R.S. 11:233(B)(2)(g). As with educational incentive pay, this argument leads to the absurd result that Kenner could label payment types with the intent of excluding them from pension contributions. Also as with educational incentive pay, we find that the seniority incentive pay is "earned compensation." In order to "earn" the payments, Firefighters are required to meet certain prerequisites, in the form of years of service to Kenner. As with educational incentive pay and with the supplemental pay discussed in *Fishbein*, seniority incentive pay is remunerative because, in exchange for the payments, Kenner retains more experienced firefighters.[11] Seniority incentive pay qualifies as a portion of the "full amount" earned by a Firefighter on his tour of duty, because even though it is paid only once a year, a Firefighter does not receive the payment unless he completes each of his required tours of duty.

---

[10] The present rate of seniority incentive pay is $48 for each full year of service. An employee with one year (12 months) of service receives $48; an employee with two years (24 months) of service receives $96; etc.

[11] Kenner further argues that seniority incentive pay is a payment for "status, not services." We reject this interpretation; the payment is clearly intended to compensate Firefighters not merely for "status," but also for advanced skills and training experienced Firefighters provide to Kenner.

Further supporting the argument that this type of compensation is "earned," Kenner's seniority incentive pay is similar to the state statutory longevity statute described in La. R.S. 33:1992. Pursuant to this statute, after the third year of service and for each additional year of service up to and including twenty years, a firefighter receives an annual two percent increase in salary. La. R.S. 33:1992(B). This statutory increase is included as earnable compensation, because the two percent increase is part of the Firefighters' "minimum salaries," and is therefore included in the "full amount" the Firefighters earn. And, as with educational incentive pay, the legislature's decision not to specifically exclude incentive pay from the definition of "earnable compensation" in the list in La. R.S. 11:233(B)(2) further supports its categorization as "earnable."

Seniority incentive pay is not "irregular" or "nonrecurring" under La. R.S. 11:2252(9). Payments that Firefighters are promised, expect, and in fact receive annually are not, by their plain language, "irregular" or "nonrecurring." Evidence attached to the Firefighters' motion for summary judgment also makes clear that the payments were regularly paid by Kenner and received by the Firefighters, and is to continue as long as the funds are available.[12]

**Holiday Pay**

Holiday pay is compensation mandated by statute for firefighters who are required to work on holidays. La. R.S. 33:1999.[13] We agree with the court of

---

[12] The evidence included:

A flyer, marked "FOR POSTING," which describes an increase in "the monthly pay-out factor" for firefighters who qualify for seniority incentive pay. The final sentence of the flyer reads: "both of our incentive pay plans (the education and the SIP) will remain in affect [sic] as long as we have the money to fund them."

A flyer, marked "POSTED IN ALL FIRE STATIONS," which describes an increase in the educational incentive plan and the seniority incentive pay plan and states that the changes "will remain in effect each future year as long as funds are available."

[13] La. R.S. 13:1999 states:

Firefighters in municipalities, parishes, and fire protection districts who are required to work on holidays . . . shall receive in addition to the compensation to which such employee would be entitled under laws and pay plans now in effect, compensation at the rate of one times his usual salary, to be determined by reducing his average monthly salary to an hourly scale;

appeal that holiday pay qualifies as "earnable compensation," because it is a remunerative, non-gratuitous payment made to compensate and reward firefighters who work during holidays – a plain language understanding of the term "earned."

We first find that holiday pay was "earned." It comprises the "full amount" of the compensation a Firefighter receives as part of a regular tour of duty. In fact, the Louisiana Attorney General has previously opined that holiday pay is "earned," describing it as a "collectively bargained for benefit" that is "part of the overall compensation paid to firefighters as part of their *earned compensation* pursuant to reciprocal contractual obligations under the respective [bargaining] agreements." La. Atty. Gen. Op. No. 07-0280 (Dec. 14, 2007) (emphasis added).[14] As the Attorney General notes, there is a "public purpose" for the payments, and cities receive "equivalent value in the form of fire protection throughout the year." *Id.* We adopt the Attorney General's rationale in this context and find that the payments are earned by the Firefighters on a regular tour of duty and are part of the "full amount" of earned compensation.[15]

Second, holiday pay is not "irregular" or "nonrecurring." Kenner argued that it is by its nature irregular, because a Firefighter's regular tour of duty rotates over various shifts on a 28-day cycle, and a Firefighter may or may not be required to work on a specific holiday in a given year. This argument fails, because it both ignores both that these 28-day cycles are part of a Firefighter's "regular tour of duty," and that La. R.S. 33:1999(B) provides that firefighters "shall be entitled to

---

provided that in lieu of additional compensation, governing authorities, at their option, may grant fire department employees time off from work for which such additional compensation would be due and payable to said employees.

[14] Although attorney general opinions are merely advisory and not binding on this Court, we have recognized their persuasive authority. *City of New Orleans v. Bd. of Directors of La. State Museum,* 98-1170 (La. 3/2/99), 739 So. 2d 748, 753 n.11.

[15] In *Parker v. Garace*, 354 So. 2d 1022 (La. 1978), the Court held that holiday pay is a "fringe benefit of employment not ascribable to services performed on the holiday or the week of the holiday or any other specific calendar period." *Id.* at 1026. *Parker* related to unemployment compensation, not pension laws, and dealt with the definition of "fringe benefits," which were expressly excluded from the calculation of "wages" for unemployment purposes. *Id.*

not less than ten holidays per year," which reveals some amount of regularity in the scheduling of holidays among Firefighters. This is the case in practice as well, as made clear in a study attached to the Firefighters' motion for summary judgment. The study reported that 56 out of 57 (98.2%) Firefighters over the course of a three-year study received some type of holiday pay. *See* 14-113, p.18, 170 So. 2d at 1075 (noting that "almost all firefighters included in the study worked on holidays and, as mandated by statute, received holiday pay"). Finally, something "irregular" is "not normal or usual," and something "nonrecurring" is "unlikely to happen again." *See supra* at 9-10. Neither of these definitions applies to holiday pay as presented in this case and, because holiday pay is not analogous to a gratuitous bonus insofar as Kenner receives a reciprocal benefit, holiday pay is not within the exclusions of La. R.S. 11:233(B)(2)(g).[16]

**Acting Pay**

Every fire service employee has a permanent civil service classification. A firefighter earns "acting pay" when he or she fills in for an absent colleague who holds a higher civil service classification. The firefighter is then paid more in accordance with that higher classification. In other words, during temporary and permanent vacancies in positions, firefighters "act" in the absence of another firefighter. *See* La. R.S. 33:2496(2) (mandating "acting" appointments over 30 days "***shall***, for the duration of the temporary employment, enjoy the class title and be entitled and receive the rate of pay for the class and position in which he is

---

[16] La. R.S. 11:2252(9)(b) provides that "any participating employer that defers the payment of regularly scheduled holiday pay and then pays such compensation to its employees in the same calendar year as its deferral in the form of a one-time annual payment shall include such deferred compensation in the employees' earnable compensation for the purpose of calculating and paying employee contributions to this system." Kenner argues that it does not defer compensation, so holiday pay is not included in La. R.S. 11:233(B)(1). As an initial matter, Kenner did not provide any evidence in support of its motion for summary judgment to support this statement. But we disagree with Kenner that this provision means any holiday payment ***not*** deferred must thus be excluded from "earned compensation." Indeed, the Firefighters argue that the discussion of holiday pay at all implies that the legislature intended it to be included as part of La. R.S. 11:233. Because we find that the payments are regular, recurring, non-gratuitous and part of a regular tour of duty, we do not reach the question of the implication of this particular provision.

employed") (emphasis added). We agree with the court of appeal and find that acting pay is part of the "full amount" a Firefighter earns on a regular tour of duty, and is not irregular, nonrecurring, or otherwise part of the La. R.S. 11:2252(B)(2)(g) catch-all provision.

Acting pay is "earnable compensation" within the meaning of La. R.S. 11:233 and La. R.S. 11:2252(9). It meets all of the qualifications for "earnable compensation," including that it is part of the "full amount" of compensation a Firefighter receives based on direct work he performs as part of a regular tour of duty. These additional responsibilities are non-gratuitous and paid, and therefore comprise the "full amount" of earned compensation.

Kenner focuses on the argument that acting pay is irregular and nonrecurring under La. R.S. 11:233(B)(2)(g), because, according to Kenner, employees can decline the temporary appointment, and there is no specific schedule and no guarantee of an assignment to a higher classification. This argument is incorrect. Even if "acting" pay is temporary and not guaranteed, the increased differential rate of pay constitutes the "full amount of compensation earned" by a Firefighter on a regular tour of duty during the time of the "acting" role. Moreover, evidence attached to the Firefighters' motion for summary judgment makes clear that this type of pay is not "irregular" in any sense – it is not abnormal or unusual for a Firefighter to receive acting pay. Nearly 90 percent of Firefighters earned acting pay over a three-year period. Though the amount may vary by appointment, rank, and time served in the "acting" role, the acting pay comprises the full amount of compensation earned on a regular tour of duty.[17]

---

[17] Kenner provided no evidentiary support for the assertion that acting pay is by definition irregular or nonrecurring in its motion for summary judgment, and provided no rebuttal evidence to the Firefighters' motion.

17

**<u>DECREE</u>**

For the reasons set forth herein, we find that the trial court erred in granting Kenner's motion for summary judgment on each of the four types of compensation at issue – educational incentive pay, seniority incentive pay, holiday pay, and acting pay – and denying the Firefighters' cross-motion for summary judgment. We further hold that the court of appeal was correct to find no genuine issues of material fact that the four payment types must be included as "earnable compensation" and that the Firefighters were entitled to judgment as a matter of law, and to its rendering of summary judgment in favor of the Firefighters. Accordingly, we affirm the judgment of the court of appeal.

**AFFIRMED**

01/27/2016

SUPREME COURT OF LOUISIANA

NO. 2015-C-1175

MICHAEL DUNN AND THE CLASS OF SIMILARLY SITUATED
PERSONS, KENNER FIRE FIGHTERS ASSOCIATION LOCAL 1427 IAFF

VERSUS

CITY OF KENNER

ON WRIT OF CERTIORARI TO THE COURT OF APPEAL,
FIFTH CIRCUIT, PARISH OF JEFFERSON

**Hughes, J., dissenting in part.**

I respectfully dissent in part. I believe that while holiday pay and acting pay are properly included, educational incentive pay and seniority incentive pay should not be included in the pension calculation.