# Supreme Court of Louisiana

FOR IMMEDIATE NEWS RELEASE                              NEWS RELEASE #030

FROM: CLERK OF SUPREME COURT OF LOUISIANA


The Opinions handed down on the **27th day of June, 2018**, are as follows:


**BY CRICHTON, J.**:


2017-CC-1112     KERRY MAGGIO v. JAMES PARKER; THE SANDWICH KINGS, LLC (D/B/A
                 JIMMY JOHN'S); REPUBLIC-VANGUARD INSURANCE COMPANY; AND
                 METROPOLITAN PROPERTY AND CASUALTY INSURANCE COMPANY (Parish of
                 Ascension)
                 In this matter, which is at the summary judgment phase, we are
                 called upon to decide whether a settlement which purports to
                 release "all other persons, firms, or corporations who are or
                 might be liable" applies to defendants who were not direct
                 parties to the settlement. For the reasons that follow, we find
                 that the defendants are not entitled to summary judgment, reverse
                 the opinion of the court of appeal, and remand for further
                 proceedings.

                 AFFIRMED.

                 WEIMER, J., dissents and assigns reasons.
                 GUIDRY, J., dissents and assigns reasons.
                 CLARK, J., dissents and assigns reasons.
                 HUGHES, J., additionally concurs and assigns reasons.

SUPREME COURT OF LOUISIANA

No. 2017-CC-1112

KERRY MAGGIO

VERSUS

JAMES PARKER; THE SANDWICH KINGS, LLC
(D/B/A JIMMY JOHN'S); REPUBLIC-VANGUARD INSURANCE
COMPANY; AND METROPOLITAN PROPERTY
AND CASUALTY INSURANCE COMPANY

ON SUPERVISORY WRITS TO THE TWENTY-THIRD JUDICIAL
DISTRICT COURT FOR THE PARISH OF ASCENSION

**CRICHTON, Justice**

In this matter, which is at the summary judgment phase, we are called upon to decide whether a settlement which purports to release "all other persons, firms, or corporations who are or might be liable" applies to defendants who were not direct parties to the settlement. For the reasons that follow, we find that the defendants are not entitled to summary judgment, reverse the opinion of the court of appeal, and remand for further proceedings.

## FACTS AND PROCEDURAL HISTORY

The pertinent facts of this case are largely undisputed. On January 14, 2015, plaintiff Kerry Maggio was injured in an automobile accident when his vehicle was struck by a vehicle operated by James Parker, an employee of The Sandwich Kings, LLC d/b/a Jimmy Johns ("Sandwich Kings"). The vehicle operated by Mr. Parker was owned by Brenda Parker and insured by Louisiana Farm Bureau ("Farm Bureau").

1

On June 19, 2015, plaintiff filed a petition for damages naming as defendants: Mr. Parker; Sandwich Kings, Mr. Parker's employer, contending that Mr. Parker was in the course and scope of his employment at the time of the accident; Republic-Vanguard, Sandwich King's automobile insurer; and Metropolitan Property Casualty Insurance Company, plaintiff's uninsured motorist insurer. Notably, plaintiff did not name Brenda Parker or Farm Bureau as defendants.

Less than one month later, on July 6, 2015, plaintiff entered into a "Final Release and Settlement of Claim" ("Release") with Brenda Parker and Farm Bureau. In exchange for Farm Bureau's $25,000 policy limits, plaintiff executed a release agreement which provides as follows:

> FOR AND IN CONSIDERATION of the payment of $25,000.00 to me/us in hand paid by Louisiana Farm Bureau Casualty Insurance Company and Brenda Parker hereinafter called payor(s), the receipt of which is hereby acknowledged, I/we Kerry Maggio address 2148 Cherokee St # B, Baton Rouge LA 70806-6605, being of lawful age, **do hereby release, acquit and forever discharge the said payor(s), their agents and employees,** *and all other persons, firms or corporations who are or might be liable*, **from any and all actions, causes of action, claims, demands, damages, costs, loss of services, loss of consortium, expenses, and compensation on account of or in any way growing out of any and all known and unknown personal injuries and property damage, resulting or to result from an accident that occurred on or about 01/14/2015** by reason of an automobile accident including any other claims that I/we may have which arose at the time of or prior to such accident, and do hereby for myself (or ourselves) heirs, executors, administrators, successors and assigns, covenant with the said payor(s), their agents and employees, and all other persons, firms or corporations which are or may be liable to indemnify and save them harmless from all claims and demands, costs, loss of services, loss of consortium, expenses and compensation on account of or in any wise growing out of said accident or its results, known and unknown, or prior claims, both to persons and property.
>
> I/we know and understand that the injuries sustained may be permanent and progressive and recovery therefrom is uncertain and indefinite and there may be injuries or results of injuries not yet evident, recognized or known and in making this release, I/we rely wholly upon my/our judgment, knowledge and belief as to the nature, extent and duration of said injuries and as to the questions of liability involved and have not been influenced by any representations regarding the same; that the claims are doubtful and disputed and the above consideration is

2

accepted in full compromise, accord and satisfaction thereof, and the payment of said consideration is not an admission of liability.

I have read this Release or had it read to me and I understand it.

(Emphasis added.)

After obtaining a copy of the release, on March 30, 2016, Sandwich Kings and Republic-Vanguard ("defendants") filed a motion for summary judgment contending that they were entitled to dismissal based upon the July 6, 2015 Release. According to defendants, because the Release released "all other persons . . . who are or might be liable" for the injuries plaintiff incurred as a result of the accident, the Release had the effect of releasing defendants. Plaintiff opposed the motion for summary judgment, arguing that defendants were not a party to the release and did not provide any consideration for the release, and therefore, cannot claim a benefit from it.

The district court denied defendants' motion for summary judgment. The defendants thereafter sought supervisory review with the court of appeal, which denied the writ without comment. Defendants then applied for review to this Court. We granted defendants' writ application and remanded the matter to the court of appeal for briefing, argument, and full opinion. *Maggio v. Parker*, 16-1988 (La. 12/16/16), 211 So. 3d 392. On remand, in a divided opinion, the court of appeal found no error in the judgment of the trial court denying the defendants' motion for summary judgment. *Maggio v. Parker*, 16-1075 (La. 6/2/17), 2017 WL 2399358 (unpublished) (Theriot, J., dissenting). The majority reasoned that summary judgment was inappropriate because defendants did not meet their burden of proving that the release manifested a clear intention to benefit them as third party beneficiaries. The dissenting judge disagreed, finding the language of the release was clear and unambiguous and "offers no other conclusion than that the relators had been released from liability." *Id*., at p.13. We thereafter granted certiorari to

3

consider the correctness of the court of appeal's ruling. 17-1112 (La. 10/27/17), 228 So. 3d 1224.

## **DISCUSSION**

A motion for summary judgment is a procedural device used when there is no genuine issue of material fact for all or part of the relief prayed for by a litigant. It is reviewed on appeal de novo, with the appellate court using the same criteria that govern the trial court's determination of whether summary judgment is appropriate; *i.e.*, whether there is any genuine issue of material fact, and whether the movant is entitled to judgment as a matter of law *See*, *e.g.*, *Dunn v. City of Kenner*, 15-1175, p.10 (La. 1/27/16), 187 So. 3d 404, 412. In ruling on a motion for summary judgment, the judge's role is not to evaluate the weight of the evidence or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. All doubts should be resolved in the non-moving party's favor. *Hines v. Garrett*, 2004-0806 (La. 6/25/04), 876 So. 2d 764, 765. A fact is material if it potentially ensures or precludes recovery, affects a litigant's ultimate success, or determines the outcome of the legal dispute. A genuine issue is one as to which reasonable persons could disagree; if reasonable persons could reach only one conclusion, there is no need for a trial on that issue and summary judgment is appropriate. *Id.* at 765-66.

In their motion for summary judgment, defendants assert that the clear and unambiguous language in the release discharged all persons, whether or not signatories to the release, who were or could be liable to plaintiff for any and all claims arising out of the January 14, 2015 accident. As set forth above, the release specifically named Farm Bureau and Brenda Parker, and their agents and employees, but also included broad language, stating "***all other persons, firms or corporations***"

4

were released from liability for the January 14, 2015 accident. According to defendants, under La. Civ. Code art. 2046, because the release is clear and unambiguous, parol evidence cannot be used to determine the intent of the parties.

"A compromise is a contract whereby the parties, through concessions made by one or more of them, settle a dispute or an uncertainty concerning an obligation or other legal relationship." La. Civ. Code art. 3071. The compromise instrument is governed by the same general rules of construction applicable to contracts. *Brown v. Drillers, Inc.*, 93-1019 (La. 1/14/94), 630 So. 2d 741, 748. Therefore, in interpreting a contract, the analysis must start with the premise that legal agreements have the effect of law upon the parties and that the courts are bound to give legal effect to all such contracts according to the true intent of the parties. *Leenerts Farms, Inc. v. Rogers*, 421 So. 2d 216 (La. 1982). *See also Brown*, 630 So. 2d at 748 (a compromise "must be interpreted according to the parties' true intent"). This principle is enshrined in the Civil Code, which states: "A compromise settles only those differences that the parties clearly intended to settle, including the necessary consequences of what they express." La. C.C. art. 3076.

Accordingly, when the words of the settlement agreement are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent. C.C. art 2046. However, Louisiana courts have crafted a jurisprudential exception to the extrinsic evidence rule for compromise agreements. When a dispute arises as to the scope of a compromise agreement, "extrinsic evidence can be considered to determine exactly what differences the parties intended to settle." *Brown*, 630 So. 2d at 749. As this Court unanimously remarked in *Brown*, an opinion authored by Justice Pike Hall, a "long line of jurisprudence holds that a general release will not necessarily bar recovery for those aspects of a claim not intended by the parties to be covered by the release." *Id.* Intent

5

is determined by reading the compromise instrument "in light of the surrounding circumstances at the time of execution of the agreement." *Id. at* 748-49. The parties to a release instrument are therefore "permitted to raise a factual issue as to whether unequivocal language in the instrument was intended to be unequivocal." *Id.*

In interpreting this jurisprudential rule, courts have cautioned that, absent some substantiating evidence of mistaken intent, no reason exists to look beyond the four corners of the instrument to ascertain intent. *Brown*, 630 So. 2d at 749. Therefore, utilizing a case-by-case analysis, Louisiana courts have limited the application of the extrinsic evidence exception to cases in which substantiating evidence is presented establishing either (1) that the releasor was mistaken as to what he or she was signing, even though fraud was not present; or (2) that the releasor did not fully understand the nature of the rights being released or that the releasor did not intend to release certain aspects of his or her claim. *Id.* When the factual circumstances surrounding the execution of the release instrument do not fall within either of the above categories, Louisiana courts have applied the general rule of construction in La. Civ. Code art. 2046 and have not hesitated to confine their analysis to the four corners of the instrument. *Brown*, 630 So. 2d at 749.

With these principles in mind, we turn to the terms of the Release in this case, the nature of the substantiating evidence presented, and circumstances surrounding the signing of the Release. As an initial matter, the Release unambiguously released "all other persons, firms or corporations who are or might be liable from any and all actions, causes of action, claims, demands, damages, costs, loss of services, loss of consortium, expenses, and compensation on account of or in any way growing out of any and all known and unknown personal injuries and property damage, resulting or to result from an accident that occurred on or about 01/14/2015." Defendants argued that this broad language released them from any liability they may have had

6

to plaintiff. Therefore, plaintiff must offer substantiating evidence of mistaken intent to oppose summary judgment.

Circumstances unique to this case surrounding the signing of the document give rise to an issue of fact regarding intent sufficient to defeat summary judgment. First, the released parties, Farm Bureau and Brenda Parker, were not made defendants in the lawsuit. In other words, the Release was negotiated with potentially liable parties who were not involved in the litigation. Second, the Release was signed just weeks after the lawsuit was filed, and yet the Release did not expressly include defendants. Indeed, defendants were not involved in the Release negotiations and contributed nothing to the settlement. Third, plaintiff did not dismiss the lawsuit against defendants after the Release was signed. Rather, defendants and plaintiff engaged in discovery that lasted for several months after to the signing. Plaintiff has therefore satisfied his burden to introduce extrinsic evidence under *Brown* to determine "exactly what differences the parties intended to settle" and whether the language of the Release "was intended to be unequivocal." *Brown*, 630 So. 2d at 749. We express no opinion here as to whether this evidence establishes mistaken intent outside of the summary judgment context. We merely find that the evidence raises a genuine issue of material fact regarding the intent of the parties. *See* La. C. Civ. P. art. 966(C).

Additionally, we note that defendants, at this stage of the proceedings, have not demonstrated that a third-party benefit was conferred upon them such that summary judgment is warranted. Pursuant to La. C.C. art. 1978, "[a] contracting party may stipulate a benefit for a third party" who is not named in the contract; in Louisiana, such a contract for the benefit of a third party is called a "stipulation pour autri." *See Joseph v. Hosp. Serv. Dist. No. 2 of Parish of St. Mary*, 05-2364, p.9 (La. 10/15/06), 939 So. 2d 1206, 1212. A stipulation pour autrui is never presumed. *Id.*

7

There are three criteria for determining whether contracting parties have provided a benefit for a third party: 1) the stipulation is "manifestly clear"; 2) there is certainty as to the benefit provided the third party; and 3) the benefit is not a "mere incident of the contract between the promisor and the promisee." *Id*. In short, the "most basic requirement" of a stipulation pour autrui is that the contract manifest a clear intention to benefit the third party; absent such a clear manifestation, a party claiming to be a third party beneficiary cannot meet his burden of proof. *Id.* (citations omitted).

This Court has recognized that summary judgment "is rarely appropriate for a determination based on subjective facts such as intent, motive, malice, knowledge or good faith." *Penalber v. Blount*, 550 So. 2d 577 (La. 1989). Considering the fact-intensive nature of the inquiry for determining third-party beneficiary status, we find the lower courts reached the correct result in denying defendants' motion for summary judgment insofar as they claim that the Release manifested a clear intention to benefit them as third-party beneficiaries.

## **DECREE**

For the reasons assigned, we affirm the judgments of the trial court and court of appeal denying the motion for summary judgment of defendants Sandwich Kings, LLC and Republic-Vanguard Insurance Company. The matter is remanded for further proceedings.

**AFFIRMED**

SUPREME COURT OF LOUISIANA

NO. 2017-CC-1112

KERRY MAGGIO

VERSUS

JAMES PARKER; THE SANDWICH KINGS, LLC
(D/B/A JIMMY JOHN'S); REPUBLIC-VANGUARD
INSURANCE COMPANY; AND METROPOLITAN PROPERTY
AND CASUALTY INSURANCE COMPANY

*ON SUPERVISORY WRITS TO THE TWENTY-THIRD JUDICIAL DISTRICT COURT
FOR THE PARISH OF ASCENSION*

**WEIMER, J.**, dissenting.

I concur in the dissent of Justice Clark in this matter and write separately only to offer additional comments.

In my opinion, the fundamental flaw in the majority opinion is that it eschews civil law principles that recognize the supremacy of legislation[1] and embraces a jurisprudential pronouncement (**Brown v. Drillers, Inc.**, 93-1019 (La. 1/14/94), 630 So.2d 741) when a specific codal provision governs the resolution of this case. Specifically, La. C.C. art. 2046 provides:"When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent."

The applicability of this codal provision is implicitly acknowledged with the declaration that the "Final Release and Settlement of Claim" at issue herein "**unambiguously** released 'all other persons, firms or corporations who are or might

---

[1] See La. C.C. art. 2 ("Legislation is a solemn expression of the legislative will."); La. C.C. art. 1, 1987 Revision Comment (c) ("In Louisiana, as in other civil law jurisdictions, legislation is superior to any other source of law.").

be liable from any and all actions, causes of action, claims, demands, damages, costs, loss of services, loss of consortium, expenses, and compensation on account of or in any way growing out of any and all known and unknown personal injuries and property damage, resulting or to result from an accident that occurred on or about 01/14/2015.'" **Maggio v. Parker**, 17-1112, slip op. at 6 (La. 6/ /18) (emphasis added). With this acknowledgment, the inquiry should have ended.

Nevertheless, under the guise of following the jurisprudential "exception" to the clear directive of La. C.C. art. 2046 recognized in **Brown**, an examination is made of the factual evidence to determine "whether *unequivocal* language in the instrument was intended to be *unequivocal*." **Maggio**, *supra* (quoting **Brown**, 630 So.2d at 749), emphasis added. This language from **Brown** represents a form of judicial "double speak," which evades and erodes the provisions of La. C.C. art. 2046. (After all, "unequivocal" or "unambiguous" language[2] is certainly, by any definition of the term, "clear and explicit" language, which should trigger application of La. C.C. art. 2046, and its directive that when the words of a contract are clear and explicit, "no further interpretation may be made in search of the parties' intent.") The resort, in this case, to jurisprudence over directly applicable codal authority is at odds with Louisiana's civil law heritage.

---

[2] Synonyms for unequivocal ("not subject to misinterpretation or to more than one interpretation") include: "clear, clear-cut, crystal clear, decided, ... evident, obvious, open-and-shut, ... plain, straightforward, ... unambiguous, unambivalent, unmistakable." See MERRIAM-WEBSTER THESAURUS at merriam-webster.com (online 6/18/2018). Words related to unequivocal include: "comprehensible, ... graspable, ... understandable, ... simple, ... uncomplicated, ... discernible, ... black-and-white, explicit, ... well-defined, ... [and] readable." *Id.* The words "clear" and "explicit" are used in La. C.C. art. 2046.

While no relevant "absurd consequences" from the application of La. C.C. art. 2046 in this case have been noted, a complete, full, and final release of Brenda Parker and "all other persons, firms or corporations who are or might be liable" would protect her from a potential third-party claim based on negligent entrustment.

2

Moreover, that reliance on jurisprudence is unnecessary, as **Brown** is clearly distinguishable from the instant case. In **Brown**, the plaintiff, Buell Brown, filed suit against numerous defendants, seeking damages for injuries resulting from his fall from a drilling rig. Mr. Brown's wife later asserted a loss of consortium claim. Subsequently, the parties entered into a settlement, whereby the Browns released their claims against the defendants and dismissed their lawsuit. Five years later, Mr. Brown died as a result, at least in part, of the injuries he sustained in his fall, and his widow filed a wrongful death action. The defendants moved for summary judgment, arguing that the wrongful death action was barred under the terms of the release. Mrs. Brown opposed the motion, arguing that she never intended to dismiss her wrongful death claims, as she did not expect Mr. Brown to die from his injuries.

**Brown** clearly arose under unique facts, as the wrongful death claim in that case did not accrue until long after the settlement was confected. Unlike **Brown**, where the issue before the court was whether a release confected while an injured party was still alive extended to the future, uncontemplated wrongful death action of his widow and minor child, this case involves a plaintiff who was obviously aware of his claims against the instant defendants, as he filed suit on June 19, 2015, alleging that James Parker, The Sandwich Kings LLC, Republic-Vanguard Insurance Company, and Metropolitan Property Casualty Insurance Company were liable for the damages he suffered as a result of the accident, and entered in the settlement with Farm Bureau and Brenda Parker less than one month later.

Nevertheless, under the aegis of following **Brown**, an attempt is made to identify "[c]ircumstances unique to this case surrounding the signing of the document [that] give rise to an issue of fact regarding intent." **Maggio**, slip op. at 7. While, admittedly, the circumstances identified are unique to this case, many of the cited

3

circumstances are ultimately irrelevant. For example, it is of no moment that the defendants were not specifically named in the release document, as that document expressly, explicitly, and clearly extends the release to "all other persons, firms or corporations who are or might be liable." It is equally of no moment that the defendants did not participate in the settlement negotiations or contribute any money towards the settlement because, as third party beneficiaries of the release, there is no requirement that the defendants furnish consideration for that release. See J. Denson Smith, *Third Party Beneficiaries in Louisiana: The Stipulation Pour Autrui*, 11 Tul.L.Rev. 18 (1936-1937).[3]

Moreover, there are other circumstances unique to this case that are not mentioned and that are, in my mind, significant. Foremost among those is the fact that the plaintiff signed the release directly below the following sentence, appearing in bold print in the document: "**I have read this Release or had it read to me and understand it.**" Justice Clark observes in his dissent what has been recognized for over a century: "signatures to [a document] are not mere ornaments," which statement reflects the principle of Article 2046. See **Boullt v. Sarpy**, 30 La.Ann. 494, 495 (La. 1878). A party who signs a written instrument is presumed to know its contents and cannot avoid its obligations merely by protesting that he did not understand the provisions. **Maggio**, slip. op. at 2-3 (Clark, J., dissenting). This principle especially holds true in a case, such as this one, where the plaintiff had the advice and endorsement of counsel, who signed the document directly below the plaintiff. If the

---

[3] As Professor Smith explains:

> There is nothing in the laws of this State or in the civil law background to our Code to indicate in any fashion that a third party beneficiary must furnish anything in the nature of consideration for the promise in his favor. The "consideration" for the promise is furnished by the promisee and the promise is binding for this reason.

Smith, *Third Party Beneficiaries in Louisiana: The Stipulation Pour Autrui*, 11 Tul.L.Rev. at 51.

plaintiff did not wish to release his claims against the defendants herein, he could have simply refused to sign the release as written or inserted a reservation of rights clause. He did neither.

The situation in which the plaintiff finds himself as a result of his failure to reserve his rights against the defendants herein is not an unsympathetic one. However, the resolution of this case, on the thin case of "unilateral mistake" presented by the plaintiff,[4] threatens to upset all compromises going forward and wreak havoc on the law favoring compromises. That resolution, moreover, is unnecessary, as it resorts to jurisprudence when there is a civil code article directly on point, which provides the solution to the issue presented. Because there are no relevant facts at issue, the matter should be resolved as a matter of law.

Finally, the document at issue is entitled "Final Release and Settlement of Claim." The result of the majority's resolution of this case is that there will now be a trial on the issue of intent, a trial which subverts the release's entire purpose–to clearly and explicitly conclude this litigation. The document entitled "<u>Final</u> Release and Settlement" is not now in any way final. (Emphasis added.)

I respectfully dissent from the majority opinion.

---

[4] Basically, the only fact presented by the plaintiff in favor of his position that he did not intend to release the defendants herein is that, following execution of the release, he continued to engage in discovery and did not dismiss his lawsuit against the defendants. However, as noted previously, weighed against this consideration is the fact that the plaintiff signed the release fully aware of his claim against the defendants, having filed suit a few weeks earlier. Given the clear and unequivocal language of the release, the only reasonable explanation for the plaintiff's subsequent conduct is that he simply did not read the release, despite his representations to the contrary. While unfortunate, it is not the role of the courts to relieve individuals of their own bad bargains. **Lama v. Manale**, 218 La. 511, 515, 50 So.2d 15, 16 (1950).

5

SUPREME COURT OF LOUISIANA

No. 2017-CC-1112

KERRY MAGGIO

VERSUS

JAMES PARKER; THE SANDWICH KINGS, LLC
(D/B/A JIMMY JOHN'S); REPUBLIC-VANGUARD INSURANCE
COMPANY; AND METROPOLITAN PROPERTY
AND CASUALTY INSURANCE COMPANY

ON SUPERVISORY WRITS TO THE TWENTY-THIRD JUDICIAL
DISTRICT COURT FOR THE PARISH OF ASCENSION

**GUIDRY, J., dissents and assigns reasons.**

I respectfully dissent from the majority opinion for the reasons assigned by Justice Clark.

SUPREME COURT OF LOUISIANA

No. 2017-CC-1112

KERRY MAGGIO

VERSUS

JAMES PARKER; THE SANDWICH KINGS, LLC
(D/B/A JIMMY JOHN'S); REPUBLIC-VANGUARD INSURANCE
COMPANY; AND METROPOLITAN PROPERTY
AND CASUALTY INSURANCE COMPANY

ON SUPERVISORY WRITS TO THE TWENTY-THIRD JUDICIAL
DISTRICT COURT FOR THE PARISH OF ASCENSION

**Clark, Justice, dissents and assigns reasons.**

For the reasons that follow, I respectfully dissent from the majority opinion. In this matter, we are asked to determine whether the unambiguous language of a compromise must be enforced as written. In conformity with established law, I answer affirmatively. As an initial (and notable) matter, the majority recognizes that the language of the contract is indeed unambiguous. However, it relies on a jurisprudential exception that allows extrinsic evidence to be considered to glean the parties' intent in entering into the contract and the scope of the matters compromised. *See Brown v. Drillers, Inc.*, 93-1019 (La. 1/14/94), 630 So.2d 741. In order to take advantage of this exception, the releasor must (1) have either been mistaken as to what he/she was signing or (2) not have fully understood the nature or the extent of the rights he/she was releasing. *Id.* I believe the majority's reliance on *Brown* to justify the examination of extrinsic evidence is against the very language therein which instructs courts to "confine their analysis to the four corners of the instrument" when the above categories are not met. For the following reasons, I do not believe

the *Brown* exception should have been invoked, and, accordingly, I find any resulting consideration of parol evidence is inappropriate

First, I note that at the time the July 6, 2015 release was signed, the record reveals that plaintiff was aware of his claim against the Sandwich King defendants, having just filed suit against them in the preceding weeks. The provision of the compromise which released "all other persons, firms or corporations who are or might be liable" is neither confusing nor ambiguous. A reasonable person signing a compromise with such language, knowing that he or she had just recently filed a lawsuit against defendants who were allegedly liable, would know that this provision would have the effect of releasing these defendants. Plaintiff now contends he did not fully understand the nature of the rights he was releasing; however, such a contention does not change the fact that he signed the release, which contained a provision that stated, "I have read this Release or had it read to me and understand it." In *Aguillard v. Auction Management Corp.*, 04-2804, p. 23 (La. 6/29/05), 908 So.2d 1, 17, this court explained that a person who signs a written instrument is presumed to know its contents:

> **It is well settled that a party who signs a written instrument is presumed to know its contents and cannot avoid its obligations by contending that he did not read it, that he did not understand it, or that the other party failed to explain it to him.** *See, e.g., Tweedel v. Brasseaux*, 433 So.2d 133, 137 (La. 1983) (stating: "The presumption is that the parties are aware of the contents of writings to which they affixed their signatures . . . **The burden of proof is upon them to establish with reasonable certainty that they have been deceived.**" "If a party can read, it behooves him to examine an instrument before signing it; and if he cannot read, it behooves him to have the instrument read to him and listen attentively whilst this is being done.") [emphasis added].

To allow a party to circumvent the provisions to which he contractually agreed, merely by protesting that he did not understand the provisions, undermines

2

the essence of compromise agreements and could result in the real undoing of Louisiana contract law. As we explained in *Lama v. Manale*, 218 La. 511, 515 50 So.2d 15, 16 (1950):

> Where there is a clause in a contract, and that clause is the agreement of the parties, the defense of a lack of knowledge of its existence is untenable. Courts are not created to relieve men of their bad bargains made. Where a clause of a contract is clear and unambiguous, "the letter of it should not be disregarded, under the pretext of pursuing the spirit." [emphasis added].

If the plaintiff wished to reserve his claims against the Sandwich King defendants he either could have declined to sign the release as written or inserted a reservation of rights. The plaintiff's subsequent representation that he was unaware of the broad scope of the provision, while potentially true and sympathetic, does not merit an abandonment of established Louisiana contract law, which requires clear and unambiguous language of contracts to be honored.

Second, the majority's willingness to wander outside of the four corners of the document in search of the party's intent is in contravention of previous cases, which have held similar releases to be clear and explicit (*See Baudoin v. Montoya*, 07-910 (La. App. 3 Cir. 1/30/08), 974 So.2d 877, *writ denied*, 08-479 (La. 5/2/08), 979 So.2d 1284 (expansive language in a settlement agreement settled and dismissed all claims against anyone arising out of an automobile accident, regardless of whether they were signatories to the settlement); *Hudson v. Progressive Sec. Ins. Co.*, 43,857 (La. App. 2 Cir. 12/10/08), 1 So.3d 627*, writ denied*, 09-235 (La. 3/27/09), 5 So.3d 148 (broad language contained in a settlement agreement evinces intent to dismiss all claims against anyone arising out of the accident); *Silva v. State Farm Mut. Auto. Ins. Co.*, 09-686 (La. App. 5 Cir. 3/23/10), 38 So.3d 934, *writ denied*, 10-932 (La. 6/25/10), 38 So.3d 342 (holding a broad release was clear and

3

unambiguous and evidenced an intent to release all parties liable for the accident); *Palmer v. Walker*, 09-756 (La. App. 5 Cir. 1/12/10), 31 So.3d 443 (plaintiff's failure to specifically reserve rights in a settlement agreement results in the release of all non–settling parties, including employers and insurers); *Migliore v. Traina*, 474 So.2d 980 (La. App. 5 Cir. 1985) (finding release language is so broad it clearly covers any liability of any persons whatsoever arising from the accident, in the absence of any attempt to limit the broad language of the release).

Based on the foregoing, I do not believe that either of the trigger requirements have been met to employ the *Brown* exception. Thus, based on the clear language of the settlement, the compromise should be enforced as written with no further consideration of extrinisic evidence.

Last, I disagree with the majority's view that the existence of a stipulation pour autrui cannot be established via summary judgment in this case. I find that all requirements for a third-party beneficiary contract are satisfied. (*See, Joseph v. Hospital Service Dist. No. 2 of Parish of St. Mary*, 05-2364, p. 9 (La. 10/15/06), 939 So.2d 1206, 1212, wherein the criteria are succinctly set forth.) Clearly the stipulation for a third party is manifestly evident, as the compromise explicitly provides for the release of "all other persons, firms, or corporation who are or might be liable." There is certainty as to the benefit provided the third party, as the compromise releases the third parties from further liability. Finally, the benefit is not a mere incident of the contract between plaintiff and Brenda Parker/Farm Bureau, but is in fact a separate and specific provision releasing all other persons. Accordingly, I would reverse and render judgment in favor of the defendants.

4

06/27/18

**SUPREME COURT OF LOUISIANA**

**No. 2017-CC-1112**

**KERRY MAGGIO**

**VERSUS**

**JAMES PARKER; THE SANDWICH KINGS, LLC (D/B/A JIMMY JOHN'S); REPUBLIC-VANGUARD INSURANCE COMPANY; AND METROPOLITAN PROPERTY AND CASUALTY INSURANCE COMPANY**

**ON SUPERVISORY WRITS TO THE TWENTY-THIRD JUDICIAL DISTRICT COURT FOR THE PARISH OF ASCENSION**

**Hughes, J., additionally concurring.**

Civil Code article 3075 provides: A compromise entered into by one of multiple persons with an interest in the same matter does not bind the others, *nor can it be raised by them as a defense*, unless the matter compromised is a solidary obligation (emphasis added). End of story. As for stipulation pour autrui, there must be specific intent by the contracting parties to benefit (the here unnamed) beneficiary. It's supposed to be a *stipulation*, not an accident.

Just because the law has been poorly argued, or the lower courts or this court failed to discover the correct law to apply to the facts, is not an excuse to fail to apply the law correctly once it is discovered. Louisiana has fact pleading. It is our duty to apply the correct law to the facts. Lack of research is not a worthy position for the state's highest court.