MURPHY, J.
This case arises from a dispute between plaintiff, Joyle Pertuit, and the Jefferson Parish School Board (the "JPSB") concerning the computation of retirement benefits for Jefferson Parish school bus drivers under La. R.S. 17:495 and La. R.S. 17:497.[1] The dispute centers on the JPSB's classification of "operational pay" and *638 whether that portion of a school bus driver's "operational pay" that exceeds his actual dollar-for-dollar operating expenses should be reclassified as "earnable compensation" for purposes of calculating a school bus operator's pension contributions. For the following reasons, we affirm the trial court's grant of summary judgment in favor of the JPSB, thereby dismissing Mr. Pertuit's class action suit, with prejudice, finding that no genuine issues of material fact exist and that, as a matter of law, the JPSB's operational pay policy is in compliance with the applicable statutes.
FACTUAL BACKGROUND AND PROCEDURAL HISTORY
There are no genuine issues of material fact in dispute. Mr. Pertuit, a retired school bus operator, was employed by the JPSB for over thirty years, and was the owner and operator of the bus he drove. During his employment, as required by La. R.S. 17:496 and La. R.S. 17:497,[2] Mr. Pertuit received two forms of compensation: (1) a "salary," which compensated him for the labor of driving his bus, and was based on his years of service driving the school bus and his years of experience; and (2) "operational pay," which was a cents-per-mile rate of compensation for reimbursement of expenses associated with his owning and operating the school bus, and was based on the number of miles he drove.[3]
As required by La. R.S. 17:497, the JPSB utilizes the "standard mileage rate method" as a means of reimbursing its school bus operators, such as Mr. Pertuit, for their operational expenses.[4] The JPSB uses two sub-classifications of operational pay: state operational pay, which is funded by the state; and parish operational pay, which is locally funded.[5] The JPSB classified payments made to Mr. Pertuit for the first 50 miles of his daily route as "state operational pay," and payments made to him for every mile driven over 50 miles on his daily route as "parish operational pay."[6] Mr. Pertuit's state operational pay *639 and his parish operational pay were identified separately on his payroll statements and were paid separately from his salary as mandated by La. R.S. 17:496(F).[7] The total amount of operational pay received by Mr. Pertuit for any given payroll period was equal to a combination of his state operational pay plus his parish operational pay. It is undisputed that the total amount of operational pay that Mr. Pertuit received each payroll period exceeded the minimum rate schedule for compensation of operational expenses set forth in La. R.S. 17:497.
As a school bus operator for the JPSB, Mr. Pertuit was a member of the Louisiana School Employees Retirement System ("LSERS"). For each pay period during Mr. Pertuit's employment, the JPSB deducted from his salary an amount equal to Mr. Pertuit's required contributions to the retirement system. LSERS retirement benefits are calculated based on an employee's "earnable compensation," which is defined by La. R.S. 11:1002(12), as follows:
"Earnable compensation" means the full amount earned by an employee for a given pay period. Earnable compensation shall not include operating expenses, the cost of any insurance paid by the employer, or any allowance for expenses authorized and incurred as an incident of employment, nor payments in lieu of unused sick or annual leave. Earnable compensation shall include pay received by school bus drivers for school-related extracurricular activities.
For years, the JPSB reported only a school bus operator's salary to LSERS. However, following its increase of the school bus operators' salary and operational pay, in September 2007 the JPSB began reporting the bus drivers' total operational pay as "earnable compensation" and made pension contributions to LSERS based on this amount. In December 2007, LSERS informed the JPSB that its inclusion of the bus drivers' operational pay as a part of their "earnable compensation" was in violation of La. R.S. 11:1002(12), which specifically excludes any form of operating expenses. Following notification of its error by LSERS, the JPSB advised Mr. Pertuit (as well as all other JPSB school bus operators), that effective January 15, 2008, his operational would be no longer be reported to LSERS as "earnable compensation," and, consequently, no portion of his operational pay would be considered in the calculation of his retirement benefits.[8] From January 2008 through the date of his retirement on October 1, 2012, neither Mr. Pertuit's state operational pay nor his parish operational pay were included in the computation of his "earnable compensation" for retirement contribution purposes; the JPSB has made pension contributions to all of its school bus operators solely on the amount of salary paid.[9]
*640 On May 29, 2015, Mr. Pertuit filed the instant class action law suit against the JPSB and LSERS (on behalf of himself and "all other similarly situated persons"), seeking a declaratory judgment in favor of school bus operators that pension contributions are due on all payments made by the JPSB to school bus operators that exceeded the fixed payment schedule set forth in La. R.S. 17:497. Mr. Pertuit avers that the JPSB pays its school bus operators operational pay that exceeds the actual amount needed to compensate operators for the expenses associated with owning and operating their buses. According to Mr. Pertuit, the amount of operational pay that exceeds the operators' actual expenses is, in actuality, "salary" upon which retirement benefits should be calculated. Consequently, Mr. Pertuit's suit seeks a recalculation of his retirement benefits which include his parish operational pay as "salary" and part of his "earnable compensation" for retirement purposes.[10]
In response, the JPSB filed a motion for summary judgment seeking dismissal of Mr. Pertuit's request for declaratory relief on the basis that, pursuant to La. R.S. 17:81(U), the JPSB is vested with the sole authority to "prescribe the duties and fix the salaries" of its employees, including the salaries of its school bus operators.[11] Citing Louisiana Assoc. of Educators v. St. Tammany Parish School Bd ., 430 So.2d 1144, 1149 (La. App. 1 Cir. 1983), the JPSB argued that any decisions it makes pursuant to this statutory authority are presumed by law to be correct and, unless in conflict with or in derogation of applicable state law, a district court lacks a legal basis to interfere with the JPSB's administrative and executive decisions to fix and classify the compensation it pays to its employees.[12] The JPSB further argued that because its "operational pay" policy in the instant case complies with the applicable provisions of La. R.S. 17:497, which governs operational pay for owners/operators of school buses, the trial court lacked a legal basis upon which to grant the declaratory relief sought by Mr. Pertuit or to otherwise set aside or interfere with the JPSB's decisions concerning how it fixes and classifies the compensation it pays to its school bus operators.[13] Additionally, the JPSB argued that La. R.S. 17:495 clearly *641 states that the schedule provided in La. R.S. 17:497 contains the minimum amount prescribed for a school bus operator's operational pay, and thus, the JPSB has opted to pay more than the minimum amount required.
In opposition, Mr. Pertuit averred that, pursuant to La. R.S. 11:1002(12), the JPSB is required to make pension contributions on the full amount paid to a school bus operator less any paid compensation for "operating expenses" or any allowances for expenses authorized and incurred. Mr. Pertuit argued that La. R.S. 17:497 mandates the payment of compensation to school bus operators under a schedule of daily fixed rates per mile for a minimum of 180 days (i.e. , the school year), and does not authorize the school board to alter the fixed mileage rate set forth in the statute. Mr. Pertuit claimed that, in this case, the JPSB unlawfully altered and arbitrarily increased the mileage rate for payment of operational expenses by $.55 per mile over the per-mile amount fixed by La. R.S. 17:497. Mr.
Pertuit argued that it was unlawful for the JPSB to arbitrarily classify or label the payments that exceeded the fixed rates set forth in La. R.S. 17:497 (or which exceeded the actual operating expenses incurred by bus drivers), as payment of "operating expenses" solely for purposes of avoiding making pension contributions on that amount, since only "operating expenses" are excluded from earnable compensation under La. R.S. 11:1001(12). According to Mr. Pertuit, this method of calculating operational pay constitutes a poorly-veiled attempt to circumvent state law and deprives Jefferson Parish school bus operators of the full amount of their earned retirement pay.
The JPSB's motion for summary judgment came for hearing on March 20, 2017.[14] Finding that no genuine issue of material fact existed, the trial judge rendered judgment granting summary judgment in favor of the JPSB and against Mr. Pertuit dismissing his claims, with prejudice. On March 29, 2017, the trial court issued written reasons for judgment.
It is from the March 20, 2017 judgment that Mr. Pertuit timely filed the instant appeal.
ASSIGNMENTS OF ERROR
Mr. Pertuit avers the trial court erred in the following respects: (1) in interpreting that, pursuant to the provisions of La. R.S. 11:1002(12), La. R.S. 17:496 E and F, La. R.S. 17:497, and La. R.S. 17:498, "operational pay" is synonymous with "operational expenses;" (2) in finding that all compensation paid to school bus operators on a cents-per-mile basis pursuant to La. R.S. 17:497 is for reimbursement of expenses incurred to operate the bus and, as such, are exempt from "earnable compensation" for purposes of calculating retirement benefits, when the compensation exceeds the operator's actual operating expenses; (3) in failing to find that the cents-per-mile rate of compensation set forth in La. R.S. 17:497 prescribes a fixed rate that cannot be exceeded or subsidized by local school boards; and (4) in failing to find that the applicable statutes (namely, La. R.S. 11:1002(12), La. R.S. 17:495 though La. R.S. 17:498 ) are ambiguous because they can be interpreted to require compensation be paid to school bus operators not only as reimbursement of their actual operating expenses, but also as remuneration for their services of driving the bus.[15]
*642 STANDARD OF REVIEW
A motion for summary judgment is a procedural device used when there is no genuine issue of material fact for all of part of the relief prayed for by a litigant. Dunn v. City of Kenner , 15-1175, p. 15 (La. 1/27/16), 187 So.3d 404, 412. A motion for summary judgment is reviewed on appeal de novo , with the appellate court using the same criteria that govern the trial court's determination of whether summary judgment is appropriate; i.e. , whether there is any genuine issue of material fact, and whether the moving party is entitled to judgment as a matter of law. Reynolds v. Bordelon , 14-2371, p. 3 (La. 6/30/15), 172 So.3d 607, 610.
DISCUSSION
By law, school bus operators in Louisiana must receive two forms of compensation: (1) a salary for the services provided in operating the bus pursuant to La. R.S. 17:496 ; and (2) compensation for reimbursement of expenses attendant to owning and operating the school bus pursuant to La. R.S. 17:497. Louisiana law mandates that contributions to a school bus operator's pension plan shall be based solely on his total "earnable compensation" as defined in La. R.S. 11:1002(12) as
"the full amount earned by an [operator]" and "shall not include operating expenses." La. R.S. 11:1002(12). Consequently, payments made by local school boards to school bus operators as compensation for reimbursement of operating expenses are not included as part of their "earnable compensation" for retirement purposes. Id.
In his first two assignments of error, Mr. Pertuit avers that the trial court erred in its statutory interpretation of La. R.S. 11:1002(12) and La. R.S. 17:496, La. R.S. 17:497, and La. R.S. 17:498, by finding that "operational pay" is the statutory equivalent to "operational expenses," and in finding that all compensation paid by the JPSB to its school bus operators, which the JPSB categorized as "operational pay," was for reimbursement of operational expenses and, as such, excluded from the calculation of their pension contributions. Mr. Pertuit argues that "operational expenses" and "operational pay" are not synonymous, and that the JPSB's arbitrary classification of payments made to operators that exceed the actual expenses they incur to operate their buses as "operating expenses," and its failure to pay pension contributions on this excess amount, is in violation of the applicable statutes and denies retired operators their lawful pensions. Moreover, Mr. Pertuit posits that, when read in pari materia , La. R.S. 17:496 and La. R.S. 14:497 require that a school bus operator's operational pay be determined by using an actual expense method of reimbursement and that any portion of an operator's operational pay exceeding his actual operating expenses must be reclassified as "salary," or compensation for additional labor, and included in the computation of his "earnable compensation" pursuant to La. R.S. 11:1002(12) for retirement contribution purposes.
*643 "Legislation is the solemn expression of the legislative will; thus, the interpretation of legislation is primarily the search for legislative intent." Dunn v. City of Kenner , 15-1175, p. 10, 187 So.3d at 409. See also
La. R.S. 24:177(B)(1) ("The text of a law is the best evidence of legislative intent."). When a law is clear and unambiguous, and its application does not lead to absurd consequences, it shall be applied as written, with no further interpretation made in search of the legislative intent. La. C.C. art. 9 ; La. R.S. 1:4. The meaning and intent of a law must be determined by considering the law in its entirety and all other laws on the same subject matter and by placing a construction on the provision in question that is consistent with the express terms of the law and with the obvious intent of the legislature in enacting it. Allen v. Allen , 13-2778, p. 11 (La. 5/7/14), 145 So.3d 341, 346. Courts should give effect to all parts of a statute and, if possible, should not give a statute an interpretation that makes any part superfluous or meaningless. McLane Southern, Inc. v. Bridges , 11-1141, p. 10 (La. 1/24/12), 84 So.3d 479, 483. The language of the statute itself is the starting point for the interpretation of any statute. Dunn , 15-1175, p. 10, 187 So.3d at 410.
Louisiana Revised Statutes 17:495 through 17:497 were enacted by the Louisiana Legislature in 1954 through the introduction of House Bill 718, Act 74 (hereinafter, the "Act"). Pursuant to the express terms of the Act, its purpose was to "authorize and direct the Louisiana State Board of Education to establish and maintain a minimum salary schedule to be paid to school bus drivers in the ... State of Louisiana[,] and to establish and maintain a minimum rate of compensation to be paid operators for the operation of school buses." Pursuant to Section 3 of the Act, the Legislature mandated that the minimum rate of compensation for the expenses associated with owning and operating a school bus be calculated in accordance with the cents-per-mile schedule set forth in the Act, which ultimately was codified in La. R.S. 17:497. Since its enactment in 1954, La. R.S. 17:497 has been amended several times to provide for an increase in the cents-per-mile rate schedule set forth therein, however, the rate schedule has remained the same since 1986.
Based upon our de novo review of the legislative history of the Act, we find nothing therein suggesting that the Legislature intended for school boards to have to use an actual cost, or dollar-for-dollar, method of reimbursement when calculating the minimum rate of compensation for a school bus operator's operational expenses, as posited by Mr. Pertuit, rather than utilizing the cents-per-mile operational schedule as a basis for determining the minimum amounts prescribed for an operator's operational pay. In support of his argument that the JPSB must use an actual cost method of reimbursement based upon the actual expenses incurred by an operator to operate his bus, Mr. Pertuit relies on the language set forth in La. R.S. 17:486(E), which states, in pertinent part, that "[f]or the purpose of receiving state reimbursement for actual expenses under the provisions of this Section ..." (Emphasis added.) Mr. Pertuit's reliance on this language, however, is misplaced. La. R.S. 17:496 governs "minimum salaries " to be paid to school bus operators. It does not govern the minimum rate of compensation for operational expenses; La. R.S. 17:497 does. The precise wording of Section F of La. R.S. 17:496 makes this clear. Specifically, La. R.S. 17:496(F) provides that "[t]he minimum salaries established in this Section shall be paid separately from any reimbursement for the minimum rate of operation provided in R.S. 17:497 ." (Emphasis supplied.)
*644 Moreover, when Section E is read in its entirety, it is evident that this section does not in any way pertain to or address the minimum rate of operational pay for operators as set forth in La. R.S. 17:497.[16] Instead, Section E concerns the right of a school board to receive reimbursement for the actual expenses it incurs in paying the minimum salaries of school bus operators that provide transportation to students with exceptionalities under the provisions of the Students with Exceptionalities statutes found in La. R.S. 17:1941 et seq. Further review of the legislative history of the Act reveals that Section E was not included in the original enactment of La. R.S. 17:496 ; it was added after the enactment of La. R.S. 17:1941 et seq. Therefore, we conclude that the reimbursement for actual expenses referred to in La. R.S. 17:496(E) relates solely to the reimbursement of the minimum salaries of operators transporting students with exceptionalities under La. R.S. 17:1941 et seq. , and is unrelated to the school board's calculation of a school bus operator's operational pay pursuant to La. R.S. 17:497.
Based upon our review of the legislative history of the Act, we disagree with Mr. Pertuit's argument that the trial court erroneously misinterpreted and misapplied the applicable statutes in this matter. Moreover, we find that the statutes at issue do not mandate that the JPSB calculate a school bus operator's operational pay by using a dollar-for-dollar actual expense method of reimbursement. Rather, the governing statute, La. R.S. 17:497, requires local school boards to utilize the cents-per-mile operational schedule set forth therein as a basis for determining an operator's operational pay. Further, in accordance with La. R.S. 11:1002(12), which governs which payments are to be included as earnable compensation for retirement purposes, we find the JPSB properly excluded the operational pay payments made to its school bus operators, including Mr. Pertuit, when calculating their retirement benefits. Accordingly, we find Mr. Pertuit's first and second assignments of error are without merit.
In his third assignment of error, Mr. Pertuit avers the trial court erred in failing to find that La. R.S. 17:497's cents-per-mile rate of compensation schedule prescribes a fixed rate that cannot be exceeded or subsidized by local school boards. While Mr. Pertuit concedes that the JPSB subsidizes operators' operational pay with local funds that exceed the cents-per-mile rates provided for in La. R.S. 17:497, he contends that the JPSB is without authority to classify these subsidies, or payments which exceed the fixed rate schedule or actual expenses incurred, as payment for "operating expenses" in order to avoid making pension contributions and reducing operators' pension benefits.[17] According to *645 Mr. Pertuit, the subsidies paid by the JPSB that exceed the fixed rate schedule or which exceed an operator's actual operating expenses should be reclassified as additional "salary" and included in the calculation of earnable compensation for retirement purposes. We address this assignment of error in two parts: (1) whether the cents-per-mile rate of compensation schedule prescribes a fixed rate of compensation or establishes a minimum mileage rate, and (2) whether the JPSB's payment to operators in the form of subsidies, or "parish operational pay," that exceeds their actual dollar-for-dollar operating expenses must be included as earnable compensation for purposes of calculating pension contributions.
1. La. R.S. 17:497's Cents-per-mile Rate Schedule
The trial court determined that " La. R.S. 17:495 makes it clear that the schedule provided by La. R.S. 17:497 contains the minimum amounts prescribed for operational pay," and that the JPSB's decision to pay its school bus drivers more than the "bare minimum" set forth in La. R.S. 17:497 was not a violation of the statute. We agree.
The issue of whether the cents-per-mile rate schedule contained in La. R.S. 17:497 established a fixed rate schedule or is meant to be a minimum mileage rate schedule for local school boards to utilize as a template for calculating a driver's
"operational pay" was specifically addressed by the Louisiana Attorney General's Office in 2006 in La. Atty. Gen. Op. No. 05-0455 (2006); 2006 La. AG LEXIS 211. Therein, the Attorney General stated the following, in pertinent part:
La. R.S. 17:497 governs operational expenses of operators of buses. La. R.S. 17:497 sets forth a schedule setting the rate of compensation to be paid per mile driven ... The question presented is whether the rate schedule in La. R.S. 17:497 limits the compensation for operational expenses a bus driver receives to the amounts per mile provided in the schedule or if the schedule sets forth minimum rates.
* * * * * * *
Unlike La. R.S. 17:496, La. R.S.17:497 does not specifically provide that the rate schedule therein consists of minimum rates. However, reference to such rate schedule being a minimum schedule is found both in La. R.S. 17:495 and 17:496(F), which provide:
La. R.S. 17:495 Establishment of minimum salary schedules
The Louisiana State Board of Education is hereby authorized and directed to establish and maintain a minimum salary schedule to be paid school bus drivers in the public schools of the state of Louisiana and to maintain a minimum rate of compensation to be paid for the operation of school buses in the public school system of the state of Louisiana.
La. R.S. 17:496 Minimum Salaries
F. The minimum salaries established in this Section shall be paid separately from any reimbursement for the minimum rate of operation provided in La. R.S. 17:497.
* * * * * * *
When reading La. R.S. 17:495, 17:496, and 17:497 in reference to each other, we find that a conclusion that the rates *646 set forth therein are minimum rates is reasonable.[18]
We find the reasoned opinion of the Attorney General on this issue persuasive and determinate that the schedule provided by La. R.S. 17:497 contains the minimum amounts prescribed for operational pay rather than fixed amounts.
Additionally, pursuant to the statute's legislative history, the rate schedule in La. R.S. 17:497 was last amended thirty years ago in 1986. Thus, while the minimum mileage rates set forth therein may have been sufficient to cover an operator's operating expenses in 1986, it is unlikely that those same rates would cover the cost of operating, maintaining and repairing a school bus today as it is indisputable that operating expenses have increased, at least to some degree, over the past thirty years. This fact alone begs support for the contention that the Legislature did not intend for the rate schedule established in La. R.S. 17:497 to be a fixed schedule, but rather, intended it to be a minimum rate schedule to be used by school boards as a template for determining an operator's base operational pay that could thereafter be subsidized by using local funds. Accordingly, we affirm the trial court's finding that the JPSB's decision to pay its school bus drivers more cents-per-mile than the minimum mileage rate set forth in La. R.S. 17:497 was not a violation of the statute.
2. Operational Pay Exceeding the Minimum Rate Schedule
Mr. Pertuit argues that the Supreme Court's recent decision in Dunn v. City of Kenner , supra , supports his contention that the amount of operational pay that exceeds La. R.S. 17:497's minimum rate schedule and an operators' actual expenses must be classified as salary and included in the calculus of their "earnable compensation" for retirement purposes. We disagree.
In Dunn , Kenner City firefighters brought a class action suit seeking retroactive adjustments and corrections to the city's contributions to their pensions. Specifically, the Supreme Court analyzed whether four types of payments made to Kenner City firefighters (including educational incentive pay, seniority incentive pay, holiday pay, and acting pay), fell within the definition of "earnable compensation" for purposes of calculating their retirement benefits. In conducting the analysis, the Supreme Court's focus centered on whether any of these types of payments were remunerative or "earned" such that pension contributions by the City of Kenner would be due. It was determined that all four types of payments were remunerative by nature and, thus, were held to fall within the definition of "earnable compensation" for retirement purposes.[19]
Based upon our de novo review, we find that the analysis required by the Supreme Court in Dunn is not required in the instant case and, thus, is distinguishable. In Dunn , because the Legislature's definition of a firefighter's "earned compensation" did not specifically include or exclude the types of incentive pay at issue, it was necessary for the Supreme Court to conduct an analysis of each of the incentive *647 pays in order to determine whether any or all of them were remunerative in nature and, thus, constituted "earnable compensation" to firefighters for retirement purposes. In the case sub judice , it is clear from the plain wording of La. R.S. 11:1002(12) that the Legislature never intended for school bus operators' operational pay to be remunerative, which is why the Legislature specifically excluded operational expenses from the earnable compensation calculus for retirement contribution purposes.
Further, we are not persuaded by Mr. Pertuit's argument that operational pay to school bus operators that exceeds their actual operating expenses is the functional equivalent of salary and should be considered earnable compensation since it allegedly compensates operators for their additional time and labor in operating their buses (i.e. , is "earned"). First, our de novo review of the record reveals that during the course of this litigation, Mr. Pertuit conceded that his school bus operator's salary was based solely on his number of years of experience as a school bus operator and was unrelated to the number of miles he daily drove the bus.
Second, as previously stated, La. R.S. 17:497 requires school boards to utilize the standard mileage rate method as a means of reimbursing operators for their operating expenses. Had the Legislature desired for local school boards to utilize an actual expense, or dollar-for-dollar, method of reimbursement, it would have specifically stated so in the statute. It did not. Instead, we find the Legislature established a minimum mileage rate schedule to be used as a template for school boards to calculate an operator's operational pay. Moreover, had the Legislature desired to include any portion of an operators' operational pay within the definition of "earnable compensation" for purposes of calculating operators' pension contributions, it would have done so. It did not. The record reflects that such an amendment to La. R.S. 11:1002(12) (i.e. , to include both base pay and operational pay within the definition of an operator's "earnable compensation") was submitted in the 2001 Regular Session through H.B. No. 1529. The bill did not make it out of the House Retirement Committee that Session, and we have found no indication that such a measure has been reintroduced since that time. For the foregoing reasons, we find Mr. Pertuit's third assignment of error lacks merit.
In his final assignment of error, Mr. Pertuit avers that the statutory scheme regarding operational pay for school bus operators is ambiguous because (1) La. R.S. 11:1002(12) does not define the term "operating expenses," and (2) La. R.S. 17:497's use of the phrase "a rate of compensation for such operation" can be interpreted to provide compensation to operators both for their labor and services rendered in driving the bus and for reimbursement of operational expenses incurred to operate the bus. According to Mr. Pertuit, the more miles an operator drives the bus, the more time he spends working, and this additional time is reflected in the additional operational pay he receives on a cent-per-mile basis and, thus, this additional sum is "earned" compensation above an operator's base salary. For many of the reasons previously discussed, we disagree.
La. R.S. 17:496 governs minimum salaries for driving a bus. A school bus operator's salary is based on his years of experience driving a bus, not on the number of miles he drives. Thus, no matter how many miles an operator drives on his daily route, his salary will remain the same. La. R.S. 17:497 governs payment of an operator's operational pay, which, according to the plain language of the statute, is intended to compensate an operator for the expenses associated with operating the *648 bus on a cents-per-mile basis and not for an operator's services of driving the bus. Moreover, Mr. Pertuit's argument ignores the reality that, regardless of whether the operational pay JPSB pays its operators is limited to the minimum rate set forth in the mileage rate schedule found in La. R.S. 17:497, the operator who drives the longest daily route is always going to receive more operational pay than the operator who drives a shorter daily route. Nonetheless, the pension benefits these two operators receive will still be the same because operational pay is excluded from an operator's earnable compensation for purposes of calculating retirement benefits. Whether this system is fair and equitable is not an issue before us to decide. Accordingly, determining that no ambiguity exists in the statutes governing this matter, we find Mr. Pertuit's fourth assignment of error to be without merit.
CONCLUSION
For the reasons set forth herein, we find that no genuine issue of material fact exists and that, as a matter of law, the statutory framework pertaining to school bus operators' salary and operational pay is unambiguous and that the JPSB's school bus operators' operational pay program complies with La. R.S. 17:495 through La. R.S. 17:497. Accordingly, we find there is no legal basis for this Court to interfere with the JPSB's authority to fix the and classify the salaries of its employees, including its decision concerning the payment and classification of operational pay for its school bus operators, including Mr. Pertuit. Therefore, we affirm the trial court's judgment granting the JPSB's motion for summary judgment and dismissing Mr. Pertuit's claims, with prejudice.
AFFIRMED.

La. R.S. 17:495 authorizes and directs local school boards to establish and maintain a minimum salary schedule for payment to school bus operators and to maintain a minimum rate of compensation to be paid for the operation of their school busses. La. R.S. 17:497 provides for compensation for operational expenses incurred by school bus operators. Compensation for operational expenses "constitutes a reimbursement for expenses and is paid separately from the minimum salary set for such employees." La. Att. Gen. Op. No. 93-151 (1993); 1993 La. AG LEXIS 124. See also La. R.S. 17:496(E).

La. R.S. 17:496 establishes minimum salaries to be paid to school bus operators. The JPSB supplements and subsidizes bus operators' salaries with local funds. La. R.S. 17:497, last amended in 1986, provides for compensation for operational expenses incurred by school bus operators based on the length of the bus and number of miles driven. Similar to bus operators' salaries, the JPSB supplements and subsidizes bus operators' operational pay with local funds.

La. R.S. 17:496(F) mandates that a school bus operator's salary be paid separately from any reimbursement for the minimum rate of operational pay required by La. R.S. 17:497. La. R.S. 17:498 provides, in pertinent part, that "[w]here the operator of a school bus is the owner thereof, he shall be paid by voucher-check stating the amount of the minimum salary as set out in R.S. 17:496 and the full amount of reimbursement for operation as set out in R.S. 17:497."

By utilizing the cents-per-mile method versus an actual expense method, the JPSB school bus operators are not required to submit receipts or proof of the actual operating expenses incurred for the operation of the school bus in order to receive "operational pay."

Since 2006, the JPSB has provided the local subsidy in "parish operational pay," which is how the local subsidy is identified.

In or about 2006, the JPSB approved a salary increase for its school bus operators. Additionally, the operators requested an increase in their operational pay as well. In response to the request, a committee of school bus operators, which included Mr. Pertuit, was formed to make recommendations to the JPSB regarding an operational pay increase. Thereafter, pursuant to the committee's recommendations, the JPSB agreed to supplement the state operational pay operators' received pursuant to the schedule set forth in La. R.S. 17:497 ($.7834 per mile) by paying operators "parish operational pay" consisting of $1.37 per mile ($00.55 per mile over the statute's required minimum) for every mile driven over 50 miles on their daily round trip routes. According to Mr. Pertuit, his daily route was over 100 miles.

At the time of his retirement, Mr. Pertuit's annual salary was $29,800. Additionally, his state operational pay amounted to $7,050.00, which reflected the mileage rate for the first 50 miles Mr. Pertuit drove on his daily route. The parish operational pay he received was determined by the mileage rate applied to every mile driven over 50 miles on his daily route times the number of miles over 50 driven per day.

According to the JPSB, and this fact has not been disputed by Mr. Pertuit, each school bus operator, including Mr. Pertuit, was refunded by the JPSB and LSERS that portion of his retirement contributions attributable to his operational pay and deducted from his pay checks between September 7, 2007 and January 14, 2008.

According to Mr. Pertuit, this has created a situation whereby full-time operators earn the same pension as part-time operators, no matter the amount of time they work or the number of miles they drive. Part-time drivers who drive less than 50 miles per day are paid the same salary as full-time drivers that drive more than 50 miles per day and pension contributions are made only on the amount of salary paid.

After filing suit, Mr. Pertuit filed a motion for partial summary judgment seeking, as a matter of law, the declaratory relief requested in his petition. Mr. Pertuit's motion has not yet been heard in the trial court.

La. R.S. 17:81(U) provides, in pertinent part, that "[n]otwithstanding the provisions of this Section, a city, parish, and other local school board shall retain all authority given by law to such boards to prescribe the duties and fix the salaries of .... all employees of such boards, as applicable."

In addition to the JPSB's motion for summary judgment, LSERS filed an exception arguing Mr. Pertuit had no cause of action against it for declaratory relief as it had no responsibility for how JPSB classified the compensation JPSB paid to its employees, for computing the employees' "earnable compensation," or making retirement contributions on behalf of JPSB employees.

After the JPSB filed its motion for summary judgment, Mr. Pertuit filed a motion for class certification and to reset his partial motion for summary judgment. Originally, all motions and LSERS's exception were set for hearing on the same day, but the parties agreed to continue Mr. Pertuit's motions pending the outcome of the JPSB's motion for summary judgment.

The LSERS' exception of no cause of action was also heard March 20, 2017, which the trial court granted. The correctness of that ruling by the trial court is not at issue on this appeal.

Though Mr. Pertuit also contends the trial court erred in its finding that all compensation paid by the JPSB to its operators under an "operational pay system" (i.e. , a cents-per-mile or mileage rate compensation system) is more convenient to the JPSB because "it is more time and cost-effective to work from a fixed schedule than to calculate each [operator's] actual expenses," he does not address this assignment of error in his brief other than to aver that "there is no record evidence supporting such finding," and that, "even if correct, "the convenience to the school board does not justify the loss of pension benefits ..." Assignments of error not briefed on appeal are considered abandoned or waived. See Uniform Rules-La. Ct. of App. R. 2-12.4, which provides, in pertinent part, that "[a]ll specifications or assignments of error must be briefed. The court may consider as abandoned any specification or assignment of error which has not been briefed."

Louisiana Revised Statute 17:496(E) states:
For the purpose of receiving state reimbursement for actual expenses under the provisions of this Section, all buses which have a capacity to transport sixteen or more students under the provisions of R.S. 17:1941 et seq. and which meet federal and state requirements, shall be considered as buses fourteen feet of longer in length.
La. R.S. 17:1941 et seq. , referred to as the Students with Exceptionalities statutes, address the duty of the state and local educational agencies to provide free education to every Louisiana student between the ages of three through twenty-one with an exceptionality. School boards, whose school bus operators provide transportation for these students, are eligible for receiving reimbursement from the State for the actual expenses incurred in paying the minimum salaries of these operators. La. R.S. 17:496(E).

As previously noted, Mr. Pertuit was a member of the committee that was formed to make recommendations to the JPSB concerning supplementing operators' compensation. This committee recommended that the JPSB subsidize an increase in the minimum cents-per-mile rates set forth in La. R.S. 17:497, which the JPSB thereafter adopted and began paying operators "parish operational pay."

La. Atty. Gen. Op. No. 05-0455 (2006); 2006 La. AG LEXIS 211*, *10-16.

For example, educational pay was considered remunerative, and not a "bonus" as urged by the City of Kenner, because the firefighters "earned" the educational incentive pay because the payment was based on a firefighter's obtaining additional education. Dunn , 15-1175, p. 17, 187 So.3d at 412. Similarly, holiday pay was determined to be remunerative and, thus, earnable compensation, because it compensated firefighters for work they actually performed on holidays. Id. , 15-1175, pp. 24-25, 187 So.3d at 414-415.